Ms. Howell Good afternoon Your Honors, Natalie Nelson Tang Howell on behalf of the appellant Ms. Amika Knight May it please the court We may proceed Your Honors Would you, do you want to reserve time for rebuttal? Two minutes would be fine Your Honors Thank you Thank you This too was a high profile publicly inflamed trial that stemmed from a 2008 break-in to our Governor Juan Luis Hospital by several masked gunmen who went into the hospital room of Ms. Howell make sure you keep your voice up Sure Your Honors You may want to just point that out more towards you In 2008 there was a break-in at our Governor Juan Luis Hospital by several masked men who went into the hospital room of an alleged hitman, shot him to death and then fled the hospital in a matter of minutes And to date there has been no arrests for that murder that we are aware of In this particular case my client Ms. Amika Knight was charged with a superseding indictment which was filed on August 13, 2009 She was charged with six counts of making false statements of which she was found not guilty One count of conspiracy to commit murder of which she was found not guilty And four counts of perjury, one not guilty and three guilty and of course we are here on that basis Our arguments are three-fold. One was as it relates to the trial court's error in its failure to exclude the contested evidence because it did not meet the relevant requirements of Rule 401 and it was substantially prejudicial under Rule 403 It is our position that there was a suppression hearing in this matter that the court held and as it relates to that suppression hearing the issue as we know it was whether or not Ms. Knight knowingly waived her Miranda rights and that was the essence of it Notwithstanding, the court despite our requests during trial did not rule on our motion to suppress It is our position that at that hearing what actually happened was the USA was allowed to go into issues that we thought were highly prejudicial as it related to the shooting incident of May 12, 2008 which was involved with drugs, guns, bloody shootout and alleged family feuds and all of that since it wasn't ruled on by the court actually came into the trial that we ended up with and as a result the highly prejudicial evidence tainted the proceedings such that the trial court that we were before found itself relying heavily on the same contested evidence to support its denial of Ms. Knight's Rule 29 motion for acquittal for a new trial I'm sorry, one of the charges was conspiracy so why wouldn't that evidence come in? Well, Your Honor, one of those charges was conspiracy to commit murder but notwithstanding it's our position that as it related to the actual You see, you have to backtrack to where we started off from because it seems to me that the court should have ruled, if the court had ruled prior to trial on that evidence then it would have made it a little bit more clear at trial what type of evidence should have come in and the evidence that came in as far as we're concerned was highly prejudicial First of all you have a conspiracy charge, second of all she was acquitted at least numerically of most of the charges I mean it seems to me that the jury did a pretty good job of parsing out what's what So I'm not sure I understand the argument. In a conspiracy to commit murder charge along with perjuries that are related to the conspiracy, what is it that the court should have kept out? Well, it's our position that for example in the perjury charge for which Manifa Knight was convicted, it stemmed from the alleged false testimony that she gave during the January 27, 2009 hearing to suppress But you didn't ask to have the charges severed? The conspiracy to commit murder offense severed from the perjury offense? No So then isn't it just normal that all that evidence would come in together? Well, to the extent that is reasonable, Your Honor, but what we thought is that the trial court should have granted Ms. Knight's motion in limine and direct the United States to submit only evidence that went towards whether or not Ms. Knight knowingly made false statements that were material to the suppression hearing. The court didn't move I mean, you've got to admit that evidence too. The acquitted her of it, but just because they acquitted her of it doesn't mean that the evidence is improperly admitted I understand, Your Honor, but when you take the trial in its entirety, you look at the evidence that came in in its entirety, it became clear that the court in its wisdom who chose for whatever reason not to rule on our pending motions and prior to, as it related to the suppression hearing prior to, that it created some sort of confusion and doubt and some issues that the jury was presented with So with that in mind, my client now is facing a free-for-all where the evidence is concerned. Yes, she was charged with conspiracy to murder as one of the charges, but notwithstanding that, Your Honor, there had to be some parceling out as to what, if any, parts of the evidence was admissible and what was not, and it was never addressed. It was just disregarded. Then when it came up again at the Rule 29, the court again reserved ruling again, so we never had an opportunity to find out from the court what evidence that it found to be material and relevant to the issue and limit the government to those. Instead, it tied into our other argument that the government here, who didn't charge anybody for the murder, still hasn't charged anybody for the murder, basically used Ms. Knight as the proxy for the murder, and by bringing in all of this highly prejudicial evidence about a shooting, for example, the shootout that occurred on May 12, 2008, that the government brought in all that information, was highly relevant to the charges at hand, but the government was allowed to bring that entire scenario that happened, the shooting, the shootout on May 12, 2012, May 12, 2008, the guns, the drugs, the whole thing came in, and what we're saying is she wasn't charged with any of that at any point, as far as I'm concerned. Nobody was charged with any of that. So why was the jury allowed to see all of that information if they charged her with conspiracy to commit murder, and this is now we're talking about the hospital proceeding, the hospital event that happened on May 20, 2008. There was no evidence, or if there was any at all, against Mr. NIFA Knight as it relates to that murder, which is where the conspiracy to murder charge came in. Ms. Howell, I know you're arguing about what was allowed in, but why don't you talk a little bit about your argument about sufficiency, because it's talking about whether or not, based on what they did get in, whether or not they proved that the statement was material. Right. It's our position- Or heard your statement at the suppression hearing, whether that was material. Counts 7, 8, and 9 of the superseding indictment was not supported by any evidence that Ms. Knight's statement was material, the statement that she made at the suppression hearing. And the suppression hearing is the one that occurred in January of 2009. The issue there was whether or not Ms. Knight knowingly and voluntarily waived her Miranda rights during the FBI interrogation that occurred. That was basically in sum what the court had to concern itself with. Instead, it got into all of this other testimony that was irrelevant and immaterial as it related specifically to that issue. And that's the problem that we had, your honors. All of the information that came in had no relevance, no connection, and no materiality as it relates to whether or not she knowingly and voluntarily waived her Miranda rights to these officers. Did the jury, when looking at whether or not the charge was proven, determine whether or not her credibility was such that it in and of itself was a material question? That's the point. There was no evidence that the jury made a finding regarding her credibility being an issue. And that was the concern. And I believe that what the government turned around and did when they brought all this information in that was irrelevant and immaterial, they turned around now and filed a superseding indictment against her, charging the false statement that she made, false statements on the stand at the suppression hearing. And that's when they came back and recharged her with a superseding indictment with the false statement and added the conspiracy to commit murder charges. That's what they did. And I believe that that prosecutorial indiscretion deprived my client of a fair trial in the manner in which they acted. And then the judge turned around now and kind of got involved with all of that evidence that had been presented and allowed the government now to continue to persist with it at trial and didn't rule. And then to add insult to injury, the other issue was then when it came to her sentencing, they allowed the enhanced provisions under the cross-sentencing based on murder, based on the conspiracy to murder charge, which we already know she was acquitted of. So her sentence was enhanced based on the government coming back. As a matter of fact, when the court initially was inclined not to go that way. So you're arguing that the district court improperly – I'm sorry – looked at certain conduct as relevant conduct and that that was improper? That's correct. We believe that – Is that how you equipped it in your brief? Sorry? Yes. That was one of the cross-sentencing provisions of USC Section 2X3.1. That was one of our other arguments that the trial court, in fashioning the sentence, ultimately decided in the government's favor to apply the sentencing provisions as it related to the enhancement being murder. But we already know that she was acquitted of conspiracy to commit murder. If anything, and we looked at any kind of enhancement, it would have to be for the false – the perjury. Because that's the only thing that she was convicted of. The false statements were all not guilty. The conspiracy to commit murder was not guilty. So it's our position that the court's reasoning was flawed when viewed in light of the actual applicable underlying offense, which is making a false statement. That's how we feel. So I know that we came to a crossroads because when the court was about to rule at sentencing as it related to the applicability, and I think it was going to be in our favor, the government asked for additional time to brief the court, which they were allowed to do so. And then eventually when the court made a written ruling at a later date, then the court decided to allow them to – to allow their request to enhance the sentencing using the cross-reference of murder. And we think that that was erroneous on the part of the court. Okay, Ms. Howell, we will have you back on rebuttal. Mr. Andrews? Good afternoon, Your Honors. Alphonso Andrews, Assistant Justice Attorney on behalf of the appellee. I'd first like to start by just clearing the record with respect to the court's ruling on the defendant's motion to exclude certain evidence. When we say certain evidence, we're speaking specifically of a shootout that occurred on May 12th of 2008 and a subsequent murder that occurred about a week afterwards on May 20th at the hospital, which counsel made a reference to. On the day of trial, December 15th, 2009, the defendant then filed, for the first time, a motion to exclude that evidence. And that is found on – in the appendix on page 1019, I believe, through 1033. You'll see her motion in memory. And it's dated October 15th. So we were faced with that on the same day of trial. As I recall, we went into chambers, and I don't recall if it was before. It might have been before we selected the jury. But we were in chambers, and among some of the things discussed was that motion. And if the court looked at the government's supplemental appendix – you'll see that there is some discussion there between the parties and the court about the relevance, if you will, of these two pieces of evidence. And I agree that at that time, in chambers, the court did not rule. However, when the court came out, just before we started trial, if you look at, again, in the supplemental appendix for the government on page 15, the court told us – and this is just before he addressed the jury. It says thereupon – I'm reading from page 15 of the supplemental appendix, sorry. The jury returned at 140. The court says, counsels, the motions eliminated are denied. And so I just point out that before we even started, there was a ruling, albeit no explanation, but a ruling on the defendant's motion to exclude these two pieces of evidence. I submit to the court that the trial court's decision to admit it and find that it – obviously, the court must have found it relevant and not overly prejudicial because that's what their argument was. And the court admitted it, that that finding was not an abuse of discretion. That's the standard that applies here. It's a very high standard. Appellant would have to show that the court acted arbitrarily or irrationally in considering this evidence. The evidence of the shootout, as well as that of the murder, is all wrapped up in the three categories of offenses that were charged in this case. There were six counts of false statements. There was three counts of perjury. And the main charge was a conspiracy to commit murder. And we submit that all of it, in essence, what we would refer to locally as one big callaloo. It's all in one. On May 12th, we have the shootout involving Amon Thomas. On May 20th, we have the killing in the hospital of a person named Shadrach Kret. As it turns out, Amon Thomas is the brother, Knight. The appellant testified that Amon Thomas and Halik Milligan, which was Knight's boyfriend or close brother, they weren't just brothers. She, by the testimony, referred to them as close brothers. The testimony also is that both of them, Kret and Amon Thomas, were shot in this shootout that occurred on May 12th. So then, you have Amon Thomas being shot in a shootout with Kret. They're both in the hospital at the same time. There's evidence that I think it was May 16th, Amon Thomas, he's out of the hospital. While he is in the hospital, there's evidence that he made threats, statements, against the entire Thomas family. He said he was going to kill them. Well, the Thomas family includes Halik Milligan, and that's significant. Because Halik Milligan now is the boyfriend of the appellant. That is the person who asked her the day before the murder, the night before the murder, somewhere around 724. Well, I take it back. Around 724 is when she got the number to give to him. But prior to that, he chose to ask her, could you get the number for Kret? She says yes. The night before the murder, around 724, she gives him the number, or she goes and gets the number. She gives it to him, like, I think an hour afterwards. And within eight hours after that, somewhere around 3.54 a.m., six masked men go into the hospital, go up to Kret's room, shoot him, and exit in, like, under three minutes. Which tells you that they knew exactly where they were going. They had it well calculated, well planned. We come now to January 26th, the following year, 2009. Agents are now questioning Ms. Knight. And they're questioning her in part because they know at least two things from the evidence. One, somebody in the hospital already told them that she said, while Kret was in the hospital, he's not going to make it past that door. Which they interpreted to mean that she had some prior knowledge that something was going to happen. And they also had some evidence that she had accessed Kret's records and searched for his room number the night before the murder. And so they ask her these questions now on the 26th. She denies all of that. She hadn't spoken to Milligan. She hadn't called his phone number. She didn't know Kret's room number on the night in question. And so now she gets charged. There's a warrant for her arrest. She shows that she's arrested the next day. And now her story changes from day one, January 26th to January 27th. Now she recalls, oh, yes, I did go in that night. He did ask me sometime before if I could go in. I did go in. I did give it to him. He came that night, and I gave him the number. Yes, I know he possesses a gun. Yes, I know that while he was in the hospital being in Kret, he made this threat towards the entire Amon Thomas family. Yes, I know that my boyfriend, not my boyfriend, Kret, had an altercation with Nathaniel Thomas, another brother of Amon Thomas. And so she makes all these admissions. And then she moves to suppress those statements. And we go to the suppression hearing. And we get to the suppression hearing. And she makes, in the government's position anyway, more false statements. All of these statements, the statement that she's making to the police, the statement she's making to the court, they're all intertwined into this murder that occurred in the hospital. And this is why that evidence of the shootout as well as the murder become very relevant. It would be difficult for the jury to put all of this in context with respect to her false statement. It's the government's position that those false statements and the pejorative statements were all made to mask the involvement of herself as well as her boyfriend in this plan, if you will. Mr. Andrews, none of whom have ever been charged with anything. Sorry? None of whom have been charged with anything. None of these conspirators, these co-conspirators. The only one that was charged, Judge Fischer, would have been Miss Knight with the conspiracy to commit murder. Correct. So you're talking about all of these events that related to Mr. Thomas, Amon Thomas, Nathaniel Thomas, her boyfriend, but no one's ever been charged. That's correct. That's absolutely correct. I can tell you just the evidence I can hold at the time. I know you argue that the scenario is relevant, certainly in your minds relevant to the conspiracy, but isn't the conspiracy to kill the gentleman in the hospital Mr. Frett? Correct. But isn't its relevancy greatly outweighed by its prejudicial content? I don't think it is, Judge, because it would be very difficult. Why do we have to know everything about the 12th, May the 12th, to convict about May the 20th? Okay. The incident that occurred on May 20th, which is the shootout between Amon Thomas and Halik Milligan, and it's the government's position provided the motive. For them, who have never been charged. Exactly. It provides the motive for the murder. But the issue is whether or not Miss Knight perjured herself in the course of the investigation about the shooting on May 20th. Well, the issue also is whether she conspired to commit that murder as well, because at the time she's charged with the conspiracy to commit murder. You don't allege that she had any role with anything to do on the 12th, do you? No. Okay. And we never argued that to the jury or suggested that in any way. Okay. So why wasn't it sufficient just to talk about what took place on the 20th, which as it relates to Miss Knight, if what you're saying about her giving the information was true, would constitute evidence of conspiracy to kill Mr. Frett on the 20th? Because motive, Judge Fischer, is always, to the extent that we could show motive, we can't always, but to the extent that we could show motive, it enhances the government's proof.  We can provide evidence for a murder without showing that the purpose. I could see that if you had Mr. Thomas or Mr. Mulligan or somebody else on trial to show motive for what they did on the 20th, but what Miss Knight did on the 20th was give information about the hospital, which she then lied about. This is true. However, if I can show that Armand Thomas had a motive, it helps to show that his brother, Halik Mulligan, had a motive as well, particularly in light of the evidence that there was a threat by Frett against the entire Thomas family. In other words, the government's position that this was a revenge shooting, and if the jury understands that, then it makes it easier for them to understand that is why Mulligan wanted it, and that's why she helped. I'll agree with you that it might make it easier, but the issue is whether or not the admission of the evidence against Miss Knight is prejudicial, whether its prejudice outweighs its relevance. Right. And I would say, Your Honor, that whatever prejudice is there is very minimal, and the reason for that is that there is nothing that the government put into evidence or argued that suggested in any way that Knight had anything to do with that initial shooting. And as Judge Greenway pointed out, it would seem that the jury's verdict in acquitting her of anything that happened to do with the murder in and of itself shows that they didn't use it against her in any prejudicial way. And it would be that, if anything, the conspiracy to commit murder, that it would have lent any sort of a prejudice to. And so we submit that it was relevant. We submit as well that it was all intertwined to the false statements and the peculiar statements because they related to that, that they were material because the judge had to judge Knight's credibility. Sure, we were there to discuss the voluntariness of her statements, but one of the arguments that were being made, even by her on the stand, is a suggestion that she was intimidated by the officers. And her credibility toss became an issue, and therefore all of this utter information concerning her making false statements were material. And so for those reasons, we would ask that the judgment of the trial court be affirmed. Thank you, Mr. Andrews. Ms. Howell? It appears to me that the jury made some concessions and gave the government the three counts of— Ms. Howell, keep your voice. It appears to me that the jury may have very well given the government some concessions in allowing the three counts of perjury as guilty, but nonetheless, and I'm pleased at least that the court has alluded to what I think is the crux of the whole thing here. The government, if they're so sure of the evidence about the motive and the family and why Thomas would have wanted to have some with Fred and Milligan, who was the ex-boyfriend of my client, then why didn't they charge any of them? Well, that's not the question before us. The only question before us is your client was charged with conspiracy to commit murder. I can't imagine anything more relevant than what happened on the 12th if you're going to be charged with what happened on the 20th. The district court apparently, based on the reference that Mr. Andrews came up with, in fact, ruled on the motion to eliminate. The jury apparently did its job because it listened to you or whoever trial counsel was from this night that they shouldn't throw it all in a hat and go along with the government. I don't really see the issue here. Well, I respect Your Honor's position, but it's our position that the court should have granted Ms. Knight's motion in limine to suppress the proposed evidence of the shootout that occurred for which no one… The shootout on the 12th? The shootout on the 12th, which there's no evidence of Ms. Knight having anything to do or have any knowledge of that shootout, nothing whatsoever. If this were a drug deal and she was charged with doing a pickup, she's a part of a conspiracy. She does a pickup on May 20th. But the bigger deal, a 5-kilo deal went down on the 12th. In that conspiracy case in which you would argue if you were her attorney, she has a relatively small role as merely a pickup person on May 20th, that wouldn't mean that the prosecution would be precluded from putting in the 5-kilo deal on May 12th, would it? It may or may not. That would be the court's discretion or the court's call. But what we have, Your Honors, in this case is absolutely highly prejudicial. This was a highly inflamed trial. I mean, you have highly prejudicial evidence coming in from a May 12, 2008 shootout flowing towards my client, although she has nothing to do with it. And the judge, I think, tried to give a directive to explain that all of the stuff that you're seeing on the video that's presented to them has nothing to do with Amifa Knight. It shouldn't have been there in the first place because it's highly prejudicial towards my client. But yet still it came in. Like the government said, if the court made a statement, motion limiting denied, the point is it shouldn't have come in under these circumstances. And if the government was so sure of its case, why up to today nobody was charged with this murder? Thank you, Ms. Howell. We thank both counsel for excellent arguments, and we'll take the matter under review.